UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 14-1238(DSD/SER)

Jin Zun Zou and Hua Ting Gao,

    Plaintiffs,

v.                                                             **ORDER**

American Modern Home Insurance
Company, an Ohio corporation,

    Defendant.

    Timothy D. Johnson, Esq. and Roeder Smith Jadin, PLLC, 7900 Xerxes Ave., Suite 2020, Bloomington, MN 55437, counsel for plaintiffs.

    Christina E. VonderHaar, Esq. and Arthur, Chapman, Kettering, Smetak & Pikala, P.A., 500 Young Quinlan Building, 81 South Ninth Street, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the cross-motions for summary judgment by plaintiffs Jin Zun Zou and Hua Ying Gao and defendant American Modern Home Insurance Company (AMI). Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants plaintiffs' motion and denies AMI's motion.

**BACKGROUND**

    This insurance-coverage dispute arises out of AMI's denial of plaintiffs' claim for losses to their home and personal property as a result of a fire. Plaintiffs are insured by AMI under Commercial General Liability Policy Number CP21884000 (Policy). See Lund Aff.

Ex. 4. The Policy carries a $100,000 limit on the building and $2,000 limit on personal property. Id. at AMIG 000042, 58. The Policy includes a "Protective Safeguards" endorsement as follows: "As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above." Id. at AMIG 000149. The schedule identifies the protective system as "smoke detectors."[1] Id. The endorsement contains the following bar to coverage:

> We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
>
> 1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
>
> 2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

Id. at AMIG 000150.

On the morning of November 24, 2013, an accidental fire started in the basement bedroom of plaintiffs' one-story St. Paul home. Lund Aff. Ex. 1, at AMIG 000019, 21-22. The heat and fire damage was largely contained in the basement bedroom, but the rest of the basement and upper floor of the home sustained smoke damage,

---

[1] The endorsement provided by plaintiffs appears to be from an earlier policy. See Roeder Aff. Ex. C. The two endorsements are, for purposes of the instant motions, functionally equivalent. The court will construe the policy in place at the time of the fire, as provided by AMI. See Lund Aff. Ex. 4.

2

as did some of plaintiffs' personal property.[2]  See id. at AMIG 000020-22; Id. Ex. 2, at AMIG 000015.  Plaintiffs estimate that it will cost $120,297.14 to fix the damage to the home.  See Roeder Aff. Ex. E.

The fire investigator, James Novak, arrived at the house as firefighters were extinguishing the fire.  Lund Aff. Ex. 1, at AMIG 000020.  Novak inspected the house and noted the following in his initial report:

> In the hallway [of the main floor], I observed that the smoke detector had been disconnected prior to the fire and was nowhere to be found.  Light smoke damage was observed throughout the hallway.  The rear master bedroom suffered light smoke damage.  The smoke detector in this room was also missing....  Th[e] third bedroom had suffered light to moderate smoke damage throughout. There was no smoke detector in this room.  Upon examination of the hallway closet, I found three smoke detectors on the shelf.

Id.  The report notes that the upstairs occupants awoke to sounds of the smoke detector in the basement, but does not note the exact location of the smoke detector or whether there were additional working smoke detectors in the home.  See id.  In a supplemental report following a second inspection of the property, Novak confirmed that there were two smoke detectors installed on the main floor and a third smoke detector in the basement bedroom.  Roeder Aff. Ex. G.  The basement smoke detector "was plugged in and showed

---

[2] Tragically, plaintiffs' house guest, who was staying in the basement bedroom, died in the fire.  The fire investigator determined that the fire was likely caused by the guest's cigarette, which ignited the mattress.  Id. at AMIG 000024.

signs of acoustic soot agglomeration, indicating that it was working and operating at the time of the fire." Id.  Novak concluded that there were "at least three working smoke detectors in the house." Id.  AMI does not dispute this finding.

On January 15, 2014, AMI denied plaintiffs' claim under the Policy's protective safeguards exclusion.  Lund Aff. Ex. 6.  On March 24, 2014, plaintiffs filed suit in state court, alleging that AMI wrongfully denied coverage, and AMI timely removed.  Both parties now move for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255.  The nonmoving party, however, may not rest upon mere

denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II.   Insurance Coverage**

In Minnesota the interpretation of an insurance policy is a question of law. Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001). The court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). The court gives unambiguous language its plain and ordinary meaning, and construes ambiguous language against the drafter and in favor of the insured. Id. at 880; Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Language is ambiguous if it is "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). However, the court "guard[s] against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722

N.W.2d 319, 324 (Minn. Ct. App. 2006) (citation and internal quotation marks omitted).

The insured must first establish a prima facie case of coverage. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009). If coverage is established, the burden shifts to the insurer to prove that a policy exclusion applies. Id. at 313. The court strictly construes exclusions against the insurer, in light of the insured's expectations. Thommes, 641 N.W.2d at 880. If the insurer demonstrates that an exclusion applies, the insured bears the burden of proving an exception to the exclusion. SCSC Corp., 536 N.W.2d at 314.

There is no dispute that the damage sustained by plaintiffs is covered under the Policy. AMI argues, however, that coverage is precluded under the protective safeguards exclusion because there were three non-working smoke alarms in a main floor closet and because plaintiffs failed to notify AMI of that fact. Plaintiffs respond that the exclusion does not apply because they had working smoke detectors in the home, one of which alerted them to the fire.

The protective safeguards exclusion excludes coverage where the insured "[k]new of any suspension or impairment in any protective safeguard listed in the Schedule... and failed to notify [AMI] of that fact" or the insured "[f]ailed to maintain any

6

protective safeguard listed in the Schedule ... in complete working order." Lund Aff. Ex. 4, at AMIG 000150. The Policy does not state, however, how many fire detectors were required to be installed and maintained in working order or whether a fire detector was required in each room of the home. This omission renders the Policy ambiguous because it creates an uncertainty with respect to plaintiffs' responsibilities. Oak River Ins. Co. v. Truitt, 390 F.3d 554, 558 (8th Cir. 2004) ("An ambiguity arises if there is duplicity, indistinctness, or uncertainty in the meaning of the contractual terms."). AMI argues that use of the word "any" erases any possible ambiguity by plainly requiring each and every smoke detector present in the home to be in installed and in working order. Even if AMI's interpretation is correct, it is unreasonable and would lead to an absurd result. See Emp'rs Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn., 165 N.W.2d 554, 556 (Minn. 1969) ("[T]he terms of a contract must be read in the context of the entire contract, and the terms will not be so strictly construed as to lead to a harsh and absurd result."). Under AMI's interpretation, coverage would be precluded even if there were functional smoke detectors throughout the house, but one uninstalled smoke alarm in a closet.[3] The result is even more absurd under the facts of this case because the smoke detector in the basement was in working order, among others in the home, and

---

[3] This would include replaced or spare smoke detectors.

served its purpose by alerting the home's occupants to the fire. Under these circumstances, the court will not construe the Policy to preclude coverage.[4]  See Taulelle v. Allstate Ins. Co., 207 N.W.2d 736, 739 (Minn. 1973) ("[I]nsurance contracts should, if possible, be construed so as not to be a delusion to those who have bought them." (citation and internal quotation marks omitted)).

### III. Enforceability of Endorsement

Plaintiffs also argue that the protective safeguard exclusion is unenforceable as contrary to the Minnesota standard fire insurance policy, which is contained in Minn. Stat. § 65A.01. "The statute was enacted to 'do away with the evils arising from the insertion in policies of conditions ingeniously worded which restricted the liability of the insurer and gave the insured less protection than he might naturally suppose he was getting under his contract.'" Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 690 (Minn. 1997) (quoting Heim v. Am. Alliance Ins. Co. of N.Y., 180 N.W. 225, 226 (Minn. 1920)).  "Because the statute has a remedial purpose, it must be broadly construed." Id. "Use of the statutory form is mandatory, and its provisions may not be omitted, changed, or waived." Id.; see also Minn. Stat. § 65A.01, subd. 1. Courts remedy a "conflict between an insurance policy and the statutory standard fire insurance policy by reforming the insurance

---

[4] Plaintiffs' failure to notify AMI of the uninstalled fire detectors likewise does not trigger the exclusion under the circumstances presented.

policy to provide at least the level of coverage provided for in the statute." Watson, 566 N.W.2d at 689.

Plaintiffs argue that the exclusion is unenforceable because it provides a basis for coverage exclusion not authorized by § 65A.01. AMI responds that subdivision 4(6) of the statute authorizes the exclusion. Subdivision 4(6) states:

> A company may print or use on its policy, printed forms covering the maintenance or supervision of security guard's service, automatic sprinkler service or the maintenance of a clear space in lumber yards, when approved by the commissioner of commerce, but no such clause shall contain any provision calling for the lapse or the suspension of the insurance coverage.

Minn. Stat.§ 65A.01, subd. 4(6). Although the subdivision references certain safeguards, e.g., a sprinkler service, it does not mention smoke detectors. Absent such language, the court cannot conclude that the subdivision authorizes exclusions based on a lack of smoke detectors. Thus, even if the court were to construe the exclusion as urged by AMI, it would be unenforceable under the Minnesota standard fire insurance policy. As a result, summary judgment in favor of plaintiffs is also warranted on this basis.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment by defendant [ECF No. 15] is denied;

9

2. The motion for summary judgment by plaintiffs [ECF No. 19] is granted; and

3. The motion to strike [ECF No. 33] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: February 17, 2015

s/David S. Doty
David S. Doty, Judge
United States District Court
